**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 13

| 1. Program Code | 2. Cross Related Files File | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|
| 5. By: Scott A Nowland, DI  At: Merrillville RO | ☐ ☐ ☐ ☐ ☐ | 6. File Title | |
| 7. ☐ Closed  ☐ Requested Action Completed  ☐ Action Requested By: | | 8. Date Prepared  02-25-2014 | |

9. Other Officers: Indiana State Police Trooper Kathy Franko, DEA Intelligence Research Specialist Stephen Morgan

10. Report Re: Initial Investigation

### SYNOPSIS

On January 27, 2014, Indiana State Police (ISP) Master Trooper, Kathy Franko asked DEA Diversion Investigator (DI) Scott Nowland to assist ISP in a criminal investigation of KOUTS HEALTH CARE INC. (KHC). Based on Trooper Franko's investigation, two Suspects, Karen DUNNING and Kathy LYNCH, allegedly conspired to illegally distribute schedule III and IV controlled substances (c/s) from KHC over a period of more than three years. DI Nowland reviewed the following items:

- Facts as documented in ISP's Case Reports
- Data records from the Indiana Pharmacy Board's prescription monitoring program (INSPECT)
- Indiana Codes (I.C.), 35-48-3-11, 35-48-4-2, 35-48-4-3, 35-43-4-13, and 35-48-4-14
- Title 21 of the Code of Federal Regulations (CFR), Parts 1307.02, 1301.11, and 1306.04,
- Title 21 of the United States Code (USC), Sections 842(a)(2), 843(a)(3), 846, and 856(a)(2)

DI Nowland documented the facts of the case in this report of investigation as, either collected by ISP or observed by DI Nowland, and determined that sufficient probable cause exists to request a search warrant for KHC and arrest warrants for DUNNING and LYNCH.

### DETAILS

| 11. Distribution:  Division  District  Other | 12. Signature (Agent)  Scott A Nowland, DI | 13. Date  02-25-2014 |
|---|---|---|
| | 14. Approved (Name and Title)  /s/ William G Baker, RAC | 15. Date  02-25-2014 |

DEA Form - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.



Lynch-00000040
Exhibit 13_Page 001

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION (Continuation) | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title | |
| 4. Page 3 of 13 | | |
| 5. Program Code | 6. Date Prepared 02-25-2014 | |

under IC 25-22.5 may treat a patient with a Schedule III or Schedule IV controlled substance for the purpose of weight reduction or to control obesity."

8. Trooper Franko reported to DI Nowland that she discovered DUNNING'S violations of State law during her investigation of a complaint that ISP received from Walgreen's Registered Pharmacist (RPh) Mitch Herzog. Trooper Franko provided DEA a copy of ISP Incident Report 13ISPC007192 (Attachment 1), documenting that DUNNING prescribed c/s in drug schedule IV to a person for the purpose of weight loss in violation of I.C. 35-48-3-11.

9. According to the ISP Report, RPh Herzog refused to fill the illegal prescription and faxed a copy of I.C. 35-48-3-11 to KHC. RPh Herzog was reportedly told by a representative of KHC that the person who presented the illegal prescription would be directed to get it filled elsewhere.

10. DI Nowland confirmed the violation as alleged in the ISP Incident Report and determined that DUNNING failed to comply with CFR, Parts 1307.02, 1301.11, and 1306.04. DUNNING'S failure to comply with the CFR resulted in criminal violations of USC Sections 842(a)(2), 843(a)(3), 846, and 856(a)(2). DI Nowland informed Trooper Franko that DEA would assist ISP in the investigation of DUNNING and others.

11. On January 31, 2014, DI Nowland requested that DEA Intelligence Research Specialist (IRS) Stephen Morgan analyze the c/s prescribing history of DUNNING during a two year period as documented in INSPECT [reference is made to a DEA Report of Investigation prepared by IRS Morgan under DEA Case               prepared on February 5, 2014].

12. IRS Morgan identified 2,143 separate c/s transactions where schedule III or IV c/s were prescribed by DUNNING to 761 different people for weight loss or to control obesity in 2012. IRS Morgan identified another 1,039 c/s transactions for schedule III and IV c/s issued for weight loss to 504 different people in 2013. In total, DUNNING issued 3,182 prescriptions for either phentermine (schedule IV c/s) or phendimetrazine (schedule III c/s) in violation of state and federal law.

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

Lynch-00000042
Exhibit 13_Page 002

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION<br>(Continuation) | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title | |
| 4. Page 4 of 13 | | |
| 5. Program Code | 6. Date Prepared<br>02-25-2014 | |

13. DI Nowland asked Trooper Franko if any of the illegal c/s prescriptions allegedly issued by DUNNING could have been forged or called-in by other persons without DUNNING'S knowledge. Franko told DI Nowland that she was also investigating a separate allegation of prescription fraud submitted by Kathy Lynn LYNCH alleging that KHC employee, Jodi DANIELS, called-in fraudulent hydrocodone prescriptions for herself using the DEA registration number of DUNNING.

14. During the course of the hydrocodone prescription fraud investigation DANIELS' employer, LYNCH, was asked by Trooper Franko to review DANIELS' c/s prescription history as documented in INSPECT and determine which prescriptions were illegally called-in by DANIELS and which ones were actually issued by DUNNING to DANIELS. LYNCH emailed a response to ISP and the response identified all 26 hydrocodone prescriptions to DANIELS as fraudulent and all six phentermine prescriptions to DANIELS as actually issued by DUNNING (Attachment 2).

15. On February 5, 2014, DI Scott Nowland, accompanied by Trooper Franko, traveled to KHC. DI Nowland and Trooper Franko presented their credentials to LYNCH and DUNNING. DUNNING asked that LYNCH join her during the DEA visit. DI Nowland presented a DEA-82 Form, Notice of Inspection of Controlled Premises (NOI), to DUNNING. DI Nowland explained the NOI to DUNNING and referred her to USC Sections 302 and 510 printed on the reverse side of the NOI. DI Nowland told DUNNING that the purpose of the inspection was to determine if DUNNING was prescribing c/s in accordance with the Controlled Substances Act.

16. LYNCH informed DI Nowland and Trooper Franko that she was told by an attorney representing their insurer to never grant permission for any inspection ever and advised DUNNING not to permit DEA to inspect KHC. DUNNING and LYNCH stepped out of the room to confer and return shortly afterward. DUNNING told DI Nowland that she would not consent to a DEA inspection of KHC and would not sign the NOI. DI Nowland thanked DUNNING and LYNCH for their time and, together with Trooper Franko, departed KHC.

17. On Thursday, February 6, 2014, Trooper Franko conducted surveillance at KHC. DI Nowland and Trooper Franko learned from LYNCH that DUNNING did

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

Lynch-00000043
Exhibit 13_Page 003

NOT FOR PUBLIC RELEASE

13ISPC007192 - Drug Enforcement Section - ISP (ISP)

## Incident Narratives

**Title: Original Narrative**

**Author:** KATHY FRANKO     **Date / Time:** 07/24/2013 19:39 Hrs     **Supp #:** 0

### SCENE PROCESSING:
None

### NARRATIVE:
    **WALGREENS PHARMACIST MITCH HERZOGG** reported one of their employees (name unknown), presented a prescription for Phentermine (Schedule IV Controlled Substance, weight loss drug) from **NURSE PRACTITIONER KAREN DUNNING.** Mr. Herzogg contacted NP Dunning's office to inform them that he couldn't fill the prescription because according to Indiana law (35-48-3-11), only a physician could issue a prescription for Phentermine. Mr. Herzogg later faxed the law to NP Dunning's office. Mr. Herzogg advised the staff member he spoke to at NP Dunning's office told him they would just have it filled somewhere else.

    I will obtain NP Dunning's prescriber profile from the **INDIANA BOARD OF PHARMACY INSPECT PROGRAM.** After I have examined the profile, I will determine if there are violations. If violations are discovered, I will decide on a course of action to take in this case.

### ADDITIONAL LEADS TO INVESTIGATE:
I will check NP Dunning's prescriber profile in INSPECT to determine if there are possible violations.

### NCIC/IDACS ENTRIES:
NONE

### ATTACHMENTS:
NONE

**Signed:** TROOPER (MASTER) K. FRANKO (#ISP5095)     **Reviewed By:** FIRST SERGEANT R. BAYS (#ISP5366)

Lynch-00000055
Exhibit 13_Page 004

**NOT FOR PUBLIC RELEASE**                                                                                     13ISPC007192 - Drug Enforcement Section - ISP (ISP)

**Title: Supplement#1 - Narrative**

**Author:** KATHY FRANKO                              **Date / Time:**   10/30/2013 15:27 Hrs        **Supp #:**  1

**SCENE PROCESSING:**
None

**NARRATIVE:**
   On 08-27-2013 I ran **NURSE PRACTITIONER KAREN DUNNING'S** DEA Registration #MD2249161 in the **INDIANA BOARD OF PHARMACY INSPECT PROGRAM.** I found that from 08-27-2012 to 10-30-2013 NP Dunning's patients have filled approximately 1,564 controlled substance prescriptions in Indiana. Of those patients, approximately 97 filled 1-6 prescriptions for Phentermine, a Schedule IV Controlled Substance prescribed for weight loss/obesity for up to 6 months. Most of the same patients NP prescribed Phentermine for were also prescribed Phendimetrazine, a Schedule III Controlled Substance prescribed for weight loss/obesity. I found at least 3 patients over the age of 65 who were prescribed one or both diet drugs. According to online information for Phentermine/Phendimetrazine patients may become tolerant to the appetite suppressant effects of the drugs after several weeks. If this does occur, the dosage should NOT be increased and the drug should be stopped. It should be noted that the above listed INSPECT information will be verified at a later date with NP Dunning.
   According to Indiana Code 35-48-3-11 Treatment for weight reduction or to control obesity Sec. 11. (a) Only a PHYSICIAN licensed under IC 25-22.5 may treat a patient with a Schedule III or Schedule IV controlled substance for the purpose of weight reduction or to control obesity. (b) A physician licensed under IC 25-22.5 may not prescribe, dispense, administer, supply, sell, or give any amphetamine, sympathomimetic amine drug, or compound designated as a Schedule III or Schedule IV controlled substance under IC 35-48-2-8 and IC 35-48-2-10 for a patient for purposes of weight reduction or to control obesity, unless the physician does the following:
(1)Determines:
(A)through review of:
(I) the physician's records of prior treatment of the patient; or
(ii) the records of prior treatment of the patient provided by a previous treating physician or weight loss program;
that the physician's patient has made a reasonable effort to lose weight in a treatment program using a regimen of weight reduction based on caloric restriction, nutritional counseling, behavior modification, and exercise without using controlled substances; and
(B) that the treatment described in clause (A) has been ineffective for the physician's patient.
(2) Obtains a thorough history and performs a thorough physical examination of the physician's patient before initiating a treatment plan using a Schedule III or Schedule IV controlled substance for purposes of weight reduction or to control obesity.
(c) A physician licensed under IC 25-22.5 may not begin and shall discontinue using a Schedule III or Schedule IV controlled substance for purposes of weight reduction or to control obesity after the physician determines in the physician's professional judgment that:
(1) the physician's patient has failed to lose weight using a treatment plan involving the controlled substance;
(2) the controlled substance has provided a decreasing contribution toward further weight loss for the patient unless continuing to take the controlled substance is medically necessary or appropriate for maintenance therapy;
(3) the physician's patient:
(A) has a history of; or
(B) shows a propensity for;
alcohol or drug abuse; or

**NOT FOR PUBLIC RELEASE**                                                13ISPC007192 - Drug Enforcement Section - ISP (ISP)

| Title: Supplement#2 - Narrative | | | |
|---|---|---|---|
| **Author:** KATHY FRANKO | **Date / Time:** 02/11/2014 18:12 Hrs | **Supp #:** 2 | |

### SCENE PROCESSING:
None

### NARRATIVE:
On 01-24-2014, **KOUTS HEALTHCARE INC. OWNER/REGISTERED NURSE KATHY LYNCH** reported one of their employees, **MEDICAL ASSISTANT JODI DANIELS,** has been phoning in unauthorized prescriptions using **NURSE PRACTITIONER DUNNING'S** and **DR. LAUREN HARTING'S** DEA Registrations. For the details of that case, see **INDIANA STATE POLICE** Incident 14ISPC000595. Lynch advised she checked pharmacy and patient records to verify the prescriptions. Lynch confirmed the following prescriptions were authorized and filled by Jodi Daniels under NP Dunning's DEA Registration:

| DATE FILLED | DRUG | PRESCRIPTION # | PHARMACY |
|---|---|---|---|
| 03-07-2013 | Phentermine | 454790 | Fagen Pharmacy |
| 11-17-2012 | Phentermine | 446076 | Fagen Pharmacy |
| 11-01-2012 | Phentermine | 446076 | Fagen Pharmacy |
| 08-17-2012 | Phentermine | 441067 | Fagen Pharmacy |
| 07-03-2012 | Phentermine | 438366 | Fagen Pharmacy |
| 05-24-2012 | Phentermine | 436193 | Fagen Pharmacy |

I contacted **FAGEN PHARMACY OWNER/PHARMACIST JERRY FAGEN** for the supporting documentation for each of the above prescriptions. Mr. Fagen will forward the information to me at a later date. I contacted Lynch and advised her of the complaint I received that NP Dunning was writing prescriptions for Schedule III and Schedule IV weight loss drugs in violation of Indiana Code 35-48-3-11. Lynch told me that was an old law, and the collaborative agreement they had with Dr. Harting allowed NP Dunning to prescribe Schedule II-V Drugs unrestricted. I told Kathy Lynch that a collaborative agreement could not supersede a law. Lynch signs her correspondence and presents herself as a Nurse Practitioner (attached).

I checked on the **INDIANA PROFESSIONAL LICENSING AGENCY WEBSITE** for Kathy Lynch's licensing information. I found Lynch holds a Registered Nurse License #28087031A and has a pending application for her Advanced Practice Nurse Prescriptive Authority. I contacted the Professional Licensing Agency for more information, and they advised Lynch's application has been pending since 06-28-2013. I queried the **HEALTHGRADES.COM** database and found Kathy Lynch is listed on their website as a Nurse Practitioner (attached). I arranged to meet with Lynch and NP Dunning at the Kouts Healthcare Inc. office located at 703 North Main Street, Kouts, Indiana on 02-05-2014. I told Lynch we would discuss both cases, and **DEA DIVERSION INVESTIGATOR SCOTT NOWLAND** would be present for the meeting.

On 02-05-2014, at approximately 2:22 p.m., (Central Standard Time) D/I Nowland and I met with NP Dunning and RN Lynch in an examination room at the clinic. D/I Nowland presented a DEA Notice of Inspection to NP Dunning. Lynch said she had attended a seminar, and their insurance man told them to refuse an inspection unless we have a search warrant. Lynch advised she was a 20-year "NP". I asked her if she was a Nurse Practitioner. Lynch said she was a Registered Nurse and had applied for her Nurse Practitioner License, but due to deaths in the family, she hadn't completed the process. I asked Lynch if she prescribed medications. She replied that she didn't prescribe for "ADD". I asked her what ADD was and she said Attention Deficit Disorder. NP Dunning and Lynch left the room briefly to discuss the Notice of Inspection. When they returned, NP Dunning advised she was refusing to allow D/I Nowland