UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KATHY L. LYNCH and KAREN S. DUNNING,<br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>) CAUSE NO. 2:17-CV-43-JEM<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment [DE 98], filed January 14, 2022, by Defendants Scott Nowland and the United States of America. Defendants move for summary judgment against Plaintiffs on the basis that there was probable cause for Plaintiffs' arrest and that is fatal to each of Plaintiffs' claims against Defendants.

**I.      Procedural Background**

On January 31, 2017, Plaintiffs filed this action for false arrest and malicious prosecution arising out of their arrest for violating the law governing prescription of controlled substances. Defendant Nowland is a United States DEA agent and Defendant Kathy Franko is an Indiana State Trooper. On December 13, 2019, Defendants United States and Nowland's motion to dismiss and Defendant Franko's motion for judgment on the pleadings were granted and Plaintiffs filed their Second Amended Complaint on January 8, 2020. The case against Defendant Franko was dismissed with prejudice on October 27, 2021, leaving Defendants Nowland and the United States as the only remaining defendants. They filed the instant motion for summary judgment on January 14, 2022. Plaintiffs filed their response on February 11, 2022, and Defendants filed their reply on February 25, 2022.

1

The parties have filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.     Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). To demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th

2

Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50. The Court looks to the burden of proof each party would bear on an issue at trial. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).

### III.   Material Facts

The version of Northern District of Indiana Local Rule 56-1[1] in effect at the time this Motion was filed required the moving party to include with its motion for summary judgment a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). In response, the opposing party is obligated to file a "'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed." N.D. Ind. L.R. 56-1(b)(2). In this case, as the moving party, Defendants submitted a Statement of Material Facts. Plaintiffs included a Statement of Material Facts in Dispute within their Response in Opposition to Defendants' Motion for Summary Judgment.

Undisputed Facts

On January 29, 2015, Nowland swore out probable cause affidavits for the arrest of Plaintiffs for allegedly writing unlawful prescriptions for and distributing controlled substances. Those probable cause affidavits arose from a months-long investigation into prescriptions written by Plaintiffs for two controlled substances, phentermine and phendimetrazine, Schedule III and IV controlled substances used for weight loss. Plaintiffs were alleged to have written approximately

---

[1] Northern District of Indiana Local Rule 56-1 was amended effective February 25, 2022.

3500 prescriptions for the drugs through Lynch's entity, Kouts Family Health Care, Inc. (KHC) in a two-year period.

From July 1, 2001, through June 30, 2015, Indiana law provided that "[o]nly a physician licensed under I.C. 25-22.5 may treat a patient with a schedule III or schedule IV controlled substance for the purpose of weight reduction or to control obesity." Ind. Code § 35-48-3-11 (2014). Indiana law prohibits using a federal or state registration number issued to another person in the course of distribution of a controlled substance. Ind. Code § 35-48-4-14(b)(2)(C). Since 1995, Advanced Practice Nurses have been permitted to prescribe controlled substances if they (1) possess a valid Indiana Controlled Substance Registration number; (2) possess a valid DEA registration number; and (3) submit proof of collaboration with a licensed medical practitioner to the Indiana State Board of Nursing. 848 Ind. Admin. Code §§ 5-1-1(a)(7), (d)).

Lynch, who was a Registered Nurse before becoming an Advanced Practice Nurse on August 24, 2014, owns and operates KHC. Lynch obtained an Indiana Controlled Substance Registration number when she became an APN but did not have a DEA registration number. Dunning was employed by KHC. She was also an Advanced Practice Nurse from 1998 through the time of her arrest and had an Indiana Controlled Substance Registration number from 1998 to the time of her arrest. Dunning also had a valid DEA registration number from August 1998 to June 2010 and from October 2010 to January 9, 2015.

Lynch and Dunning had collaboration agreements with physicians until the time of their arrest. Following the termination of a collaboration agreement with one physician on March 4, 2014, they entered into another collaboration agreement with another physician. However, the Nursing Board did not receive that collaboration agreement until August 4, 2014, leaving a gap

4

from March 4 to August 4, 2014, when the Board had no agreement on file. Each collaborating doctor reviewed patient files and signed off on them consistent with the collaboration agreements. Charts which were reviewed and signed off on by collaborating doctors included charts for patients for whom the weight loss medications were prescribed.

Dunning wrote prescriptions for the controlled substances using her DEA registration number. Lynch wrote prescriptions for the controlled substances using the DEA registration numbers of Dr. Harting and Dr. Sheets. During 2012 and 2013, Dunning wrote over 2000 prescriptions of those controlled substances for weight loss, and Lynch used Harting's or Sheets' DEA registration number to write approximately 1500 prescriptions of those substances for weight loss.

The investigation into Lynch and Dunning's prescriptions began in mid-2013, when a pharmacist reported that Dunning was writing prescriptions for controlled substances. Defendant Nowland, as part of the investigation, consulted with the Indiana Professional Licensing Agency General Counsel, who told him that Advanced Practice Nurses were not permitted to prescribe controlled substances III and IV for weight loss. In early 2014, Lynch became aware that another employee was calling in prescriptions for herself, using various DEA and Indiana Controlled Substance Registration numbers, and reported this to the DEA. Indiana state trooper Franko began an investigation. Franko questioned Lynch about Dunning's practices prescribing the weight loss medications and was told by Lynch that the doctors knew of the practices and approved it.

In March 2014, Nowland and Franko interviewed Dr. Harting, who advised them that she learned of Dunning and Lynch's prescriptions when a pharmaceutical representative advised Dr. Harting that she was the second largest prescriber of controlled substances for weight loss in

5

Indiana. This caused Dr. Harting to terminate her collaboration agreement with Dunning and Lynch. Nowland and Franko also interviewed Dr. Sheets who advised them that he did not authorize Dunning or Lynch to prescribe controlled substances for weight loss using his DEA registration number.

Both Dunning and Lynch turned themselves in after the issuance of the arrest warrants. Lynch was found not guilty at her trial in state court and the charges against Dunning were dropped.

**IV.   Analysis**

Plaintiffs allege that Nowland's actions in signing the probable cause affidavits for their arrest warrants gave rise to three causes of action: a violation of the Fourth Amendment against Nowland and Federal Tort Claims Act actions against the United States for an Indiana false arrest claim and an Indiana malicious prosecution claim. Defendants argue that Nowland believed the information and data assembled during the course of the investigation into Dunning and Lynch's practices was all true. They assert that his probable cause affidavits were proper, and Defendants therefore cannot be liable to Dunning or Lynch for violating their Constitutional rights or for the causes of action arising under Indiana law for false arrest or malicious prosecution. Plaintiffs assert that since Dunning and Lynch did not know they were violating the law, they did not have the requisite *mens rea*, and therefore there could be no probable cause for their arrest.

Probable cause is an absolute bar to a Fourth Amendment false arrest claim. *Stokes v. Board of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Probable cause does not require "conclusive proof" of a crime,

6

only a "reasonably grounded suspicion." *Boyce v. Fernandes*, 77 F.3d 946, 950 (7th Cir. 1996). Probable cause need not be "based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989). When an officer receives a report of a crime from a witness or victim, he is ordinarily entitled to make an arrest. *Wollin v. Gondert*, 192 F.3d 616, 625 (7th Cir. 1999). Subsequently discovered facts are not relevant to a probable cause determination. *See, e.g., Beauchamp*, 320 F.3d at 745.

Plaintiffs' Fourth Amendment claims against Nowland are based on *Biven v. Six Unknown Named Agents*, 403 U.S. 388 (1971), under which plaintiffs may sue federal employees for damages for alleged violations of the United States Constitution under some circumstances. *See also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In order to prevail, a plaintiff must show that the defendant, through his "own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiffs also assert false arrest and malicious prosecution claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1341. Federal Tort Claims Act claims assert violations of state law torts against the federal government and rely on substantive state law. *See Smith v. United States*, 860 F.3d 995, 998 (7th Cir. 2017). Plaintiffs were arrested in Indiana, and hence Indiana substantive tort law applies. *Id*. To succeed on an Indiana false arrest claim, plaintiffs "must demonstrate the absence of probable cause to make the arrest." *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420 at 432 (Ind. Ct. App. 2016); *see also Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1207 (Ind. Ct. App. 2017). Indiana law provides that the standard for a false arrest claim is whether the officer believed in good faith that the arrest was made with probable cause and that belief was reasonable. *Garrett v. City of Bloomington*, 478

N.E.2d 89, 95 (Ind. Ct. App. 1985). "A judicial determination [of probable cause] amounts to a *prima facie* showing of probable cause rebuttable only by evidence showing that the finding of probable cause was induced by fraud or false testimony." *Ali*, 53 N.E.3d at 432-33. To prevail on an Indiana malicious prosecution claim plaintiffs must show "the defendant, acting with malice and without probable cause, instituted or caused to be instituted a prosecution that terminated in the plaintiff's favor." *Reynolds v. United States*, 549 F.3d 1108, 1114-1115 (7th Cir. 2008). Malice may be "inferred from a total lack of probable cause, from the failure to make a reasonable or suitable inquiry, and from a showing of personal animosity" *Id*. at 1115 (quoting *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084, 1089 (Ind. Ct. App. 1992)). As with a claim for false arrest, "a judicial determination of probable cause in a criminal proceeding constitutes *prima facie* evidence of probable cause in a subsequent civil lawsuit alleging malicious prosecution." *Glass v. Trump Indiana, Inc*., 802 N.E.2d 461, 467 (Ind. Ct. App. 2004). This *prima facie* case can be overcome "only by demonstrating that it was induced by false testimony, fraud, or other improper means." *Ali*, 53 N.E.3d at 431. Thus, the issue of whether there was probable cause is dispositive of all of Plaintiffs' claims. Probable cause must take into consideration the elements of the crime being charged. *See Abbott v. Sangamon Co*., 705 F.3d 706, 725 (7th Cir. 2013).

Nowland was told by both Drs. Harting and Sheets, in their initial interviews, that they had not authorized Dunning or Lynch to prescribe controlled substances using their DEA registration numbers.[2] Nowland was told by the Indiana Professional License General Counsel

---

2 Plaintiffs argue that the testimony of the doctors during Lynch's trial is irrelevant to the issue of probable cause as it occurred after the probable cause affidavit. However, the information was known to Nowland at the time of his execution of the probable cause affidavits because he was told by the doctors during his interviews with them in 2014 that they had not authorized the use of their DEA registration numbers for these prescriptions. Plaintiffs further argue that they are entitled to have their testimony that Lynch told the doctors at the time of entering into the collaboration agreements of her prescription practices accepted as true, which this Court has done. However, it does not matter what

that nurses, even Advanced Practice Nurses, were not permitted to prescribe controlled substances for weight loss. Nowland was told, and reviewed the records showing, that Dunning had prescribed over 2000 controlled substances during a 2-year period, and that Dr. Harting's DEA number had been used by Lynch to prescribe another 1500. Nowland confirmed that Lynch did not have a DEA registration number. Nowland knew that Lynch had used Dr. Sheets' DEA registration number to order controlled substances, have them delivered to his office, take them to her office, and dispense them herself.

Plaintiffs argue that since an element of the crimes with which they were charged was that they knowingly or intentionally acted, and since they thought their conduct was legal, they cannot have formed the requisite *mens rea*, and Nowland could never have had probable cause to arrest them. They argue that until the investigation came to their attention, they thought they were authorized to prescribe controlled substances for weight loss, and that they had always told their collaborating physicians that they were doing so. They also argue that their inquiries to the Nursing Board after the investigation began went unanswered. They do not cite any legal authority for their argument that their mistaken belief in the legality of their actions means that an officer knowing of the actions would not have probable cause for arresting them.

Defendants argue "the Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 143 (1979). An officer who procures an arrest warrant violates the Fourth Amendment only if he submits the complaint "maliciously and without probable cause." *Malley v. Briggs*, 475 U.S. 335, 340-341 (1986); *see also Curtis v. Bembenek*, 48

---

Lynch told the doctors; what matters is what the doctors told Nowland, and it is undisputed that the doctors told Nowland in 2014 that they had not approved these actions by Lynch or Dunning.

F.3d 281, 284-286 (7th Cir. 1995). The standard is met if the witness "knowingly, intentionally, or with reckless disregard for the truth, makes false statements" in an affidavit, and those false statements are "necessary to the determination that a warrant should issue." *Archer v. Chisholm*, 870 F.3d 603, 615 (7th Cir. 2017) (quoting *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012)). An officer also runs afoul of the Fourth Amendment by failing to disclose "facts that she 'knew would negate probable cause.'" *Archer*, 870 F.3d at 615 (quoting *Beauchamp v. City v. Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003)). The ultimate question is "whether a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345.

In this case, the probable cause affidavits were drafted and reviewed by lawyers for the State of Indiana, and a neutral state court judge found probable cause based on the facts alleged. *See Glass*, 802 N.E.2d at 467 (holding that "a judicial determination of probable cause in a criminal proceeding constitutes *prima facie* evidence of probable cause in a subsequent civil lawsuit alleging malicious prosecution"). The fact that a jury subsequently found Lynch not guilty, and the state dismissed the charges against Dunning does not undermine the conclusion that Nowland reasonably believed probable cause existed for their arrest on January 29, 2015, when he signed the affidavits.

The information acquired by Nowland would have caused a reasonable officer to believe that probable cause existed to charge Dunning and Lynch with violating Indiana law. There is no evidence of any false statement set forth in the probable cause affidavits. There is no evidence that any of the facts asserted therein were not reasonably believed to be accurate at the time the affidavits were signed. There is also no evidence that Nowland failed to disclose or hid negative

10

or contrary information in the affidavits. There is therefore no basis for asserting of a violation of Plaintiffs' constitutional rights on the basis of false or misleading statements. *See Archer*, 870 F.3d at 615 (holding "a warrant is insufficient…if the requesting officer 'knowingly, intentionally, or with reckless disregard for the truth, makes false statement' when requesting it…"(quoting *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012)); *Beauchamp*, 320 F.2d at 743 ("Because each arrest was made pursuant to a facially valid warrant issued by a judicial officer, the detectives violated Beauchamp's rights only if reasonably well-trained officers in their positions should have known that they testimony or affidavits they provided in support of the warrants would have failed to establish probable cause, so that they should not have applied for the warrants in the first place.").

**V.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the Motion for Summary Judgment [DE 98] and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants Scott Nowland and the United States of America against Plaintiffs Kathy L. Lynch and Karen S. Dunning as to all claims in their Second Amended Complaint.

SO ORDERED this 17th day of March, 2022.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record